WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. ATLANTIC GREYHOUND CORPORATION et al.

Civil Action No. 1312.

District Court, E. D. South Carolina, Charleston Division.

Aug. 3, 1945.

Dakyns B. Stover, of Atlanta, for plaintiff.

Waring & Brockinton, of Charleston, S. C., for defendant Atlantic Greyhound Corporation.

Thomas P. Bussey, of Charleston, S. C., for defendant Emmett Pitts.

WARING, District Judge.

The complaint filed by the Administrator of the Wage and Hour Division, United States Department of Labor, requests this Court to enjoin and restrain the defendants and all persons acting under them from violating the provisions of Section 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (2) and (5). The defendants asked that the plaintiff furnish them with bills of particulars to clarify certain of the allegations of the complaint and such bills were furnished. Thereafter the defendants moved to dismiss the complaint, as supplemented by the bills of particulars, by reason of the failure to state therein a claim upon which relief can be granted.

The defendant, Atlantic Greyhound Corporation, bases its motion upon two general grounds: (1) That the complaint as implemented by the bill of particulars does not sufficiently allege that it is employer of the employees who it is claimed were underpaid; and (2) that such employees were not engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

The defendant, Emmett Pitts, bases his motion upon the second ground above set forth. The two motions may be considered together.

It is of course admitted that the defendant, Atlantic Greyhound Corporation, is engaged in the transportation of passengers for hire between different states, and hence is engaged in interstate commerce. The employees are alleged to be engaged in janitorial service, pertinent parts of the pleadings being as follows:

" * * * all janitorial services necessary to the maintenance of the enclosed portion of the bus terminal of the defendant Corporation in the City of Charleston, Charleston County, State of South Carolina, including, but without limitation, the cleaning and other care of floors, windows, furniture, and equipment, the cleaning, sanitation, and other care of rest room facilities, and the operation of the heating equipment, all of which services are necessary and essential to the operation of the said bus terminal. Subject to the general supervision and approval of the defendant Corporation, defendant, Emmett Pitts, has supervised and directed, and does supervise and direct, all employees engaged in the furnishing of such janitorial services, in the performance of their duties, and has acted, and does act both directly and indirectly in the interest of the defendant Corporation in relation to such employees."

" * * * such employees being designated as janitor-cleaners, maid-cleaners, shoe shine boys, and cleaners."

It will be noted that Pitts is alleged to be in charge and supervision of these employees.

█ I. We now turn to the Act and find in Section 3, Title 29 U.S.C.A. § 203, certain definitions. Section 3(e) states that " 'employee' includes any individual employed by an employer" and subsection (g) states " 'employ' includes to suffer or permit to work." Subsection (d) provides that " 'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." It is thus seen that the term "employer" is not limited to the narrow conception of principal and agent, or master and servant, but is given a broad meaning so as to carry out the declared purpose of the Act. The term "employer" is defined in the National Labor Relations Act, Title 29 U.S.C.A. § 152(2), in substantially the same language as that used above in the Fair Labor Standards Act, and the Supreme Court in discussing the definition says:

"In this light, the broad language of the Act's definitions, which in terms reject conventional limitations on such conceptions as 'employee,' 'employer,' and 'labor dispute,' leaves no doubt that its applicability is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications. * * *

"Hence 'technical concepts pertinent to an employer's legal responsibility to third persons for acts of his servants' have been rejected in various applications of this Act both here * * * and in other federal courts * * *. There is no good reason for invoking them to restrict the scope of the term 'employee' sought to be done in

this case. That term, like other provisions, must be understood with reference to the purpose of the Act and the facts involved in the economic relationship. 'Where all the conditions of the relation require protection, protection ought to be given.' "

National Labor Relations Board v. Hearst Publications, 322 U.S. 111–129, 64 S.Ct. 851, 859, 88 L.Ed. 1170.

Porters in railroad stations, commonly called "Red Caps," have been held to be employees of the company even though they are not paid by the railroad company. Southern Ry. Co. v. Black, 4 Cir., 127 F.2d 280, and Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914. As to employers of office building employees see Greenberg v. Arsenal Building Corporation, 2 Cir., 144 F.2d 292; Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60.

■ Of course this opinion is on a motion to dismiss based upon the allegations of the Complaint and Bills of Particulars. Additional facts affecting or modifying the views herein expressed may appear when this case is tried. As at present advised, however, it appears to me that the allegations of the plaintiff are ample to bring the defendant, Atlantic Greyhound Corporation, within the purview of the Act as an "employer" of the "employees" referred to.

■■ II. We now come to the second ground of the motions made by both the Atlantic Greyhound Corporation and Emmett Pitts, namely, that the employees involved were not engaged in commerce or in the production of goods for commerce and are, therefore, not subject to the Act. In argument considerable attention was given to the difference between the term "in commerce" and "in the production of goods for commerce." Undoubtedly there is a clear distinction between these terms. In the case of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, the Supreme Court held that elevator operators engaged in an office building were covered by the Act in view of the fact that a large number of the occupants of the office building were engaged in the production of goods for commerce. This holding appeared later to be modified by the decision of the same court in the case of McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, in which it was held that the employees of an operator of an eating house established for the use and benefit

of the employees of an interstate railroad were not covered by the Act. There have been a large number of cases, most of which are cited and relied upon by the defendants in this case clearly demarking the difference between being engaged "in commerce" and being engaged in "production of goods for commerce." The defendants cited and relied upon a number of these cases coming from various Circuit Courts of Appeal, namely: Blumenthal v. Girard Trust Co., 3 Cir., 141 F.2d 849; Johnson v. Dallas Downtown Development Co. 5 Cir., 132 F.2d 287; Lofther v. First Nat. Bank of Chicago, 7 Cir., 138 F.2d 299; Convey v. Omaha Nat. Bank, 8 Cir., 140 F.2d 640; Rosenberg v. Semeria, 9 Cir., 137 F.2d 742; and also Hinkler v. Eighty-Three Maiden Lane Corporation, D.C.N.Y., 50 F.Supp. 263, and especially a decision by the Court of Appeals of the State of New York, which has been cited in many of the foregoing, namely, Stoike v. First Nat. Bank of City of New York, 290 N.Y. 195, 48 N.E. 2d 482.

These distinctions appear to be recognized in two cases decided on June 11th of this year by the Supreme Court. See Borden Co. v. Borella, 323 U.S. ——, 65 S.Ct. 1223; 10 East 40th Street Building, Inc. v. Callus, 323 U.S. ——, 65 S.Ct. 1227.

And so the defendants relying upon this differentiation claim that the Kirschbaum case does not apply and that the employees in question are in like plight with those in the McLeod case. On behalf of the plaintiff it is admitted that the employees in this case are not engaged in the production of goods for commerce, but it is claimed that they are engaged "in commerce" and come within that classification of the Act and that they are in a very different plight from the employees in the McLeod case and in the various cases above cited. I am of the opinion that this view is sound. The employees at the bus terminal are not engaged in work similar to that in an office building devoted to different uses and occupied by tenants engaged in various occupations. In the long line of cases cited by defendants, janitors and office building employees are held not to be engaged in commerce merely because of the fact that some of the tenants of the buildings are so engaged. An office building is a separate entity and its employees have specific things to do which may be useful or helpful to the others engaged in commerce, but which are not a part of the actual business of engaging in

interstate commerce. In the instant case the sole business of the Atlantic Greyhound Corporation is "commerce" and it does not establish and maintain a bus terminal for the use of other businesses or other parties. The terminal is an integral, and I should say necessary, part of its business. I can not agree that a terminal is not a necessary adjunct to the bus business. It is as much needed as a railroad depot. In all cities of any size bus lines have terminal facilities and have established them even in small towns and villages. The furnishing of a place where busses may come in from the street, park, load and unload their passengers, is quite important and necessary in the conduct of the business. It is necessary to provide waiting rooms, lavatories, ticket offices and all other incidental services connected with the arrival and departure of busses. To maintain such facilities it is absolutely necessary that janitors and other employees be engaged to service and make habitable and useful the terminal facilities, and I am of the opinion that the maintenance and operation of a bus terminal such as the one alleged to be operated in Charleston is a part of the business of the defendant corporation and, it being engaged in commerce, this is a part of such commerce. The defendant, Pitts, is alleged to be an employee and co-employer and if such be the fact, would likewise be engaged in a necessary part of the transactions in commerce.

The defendants have cited and presented with considerable ability views of our courts in connection with the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Great stress has been laid upon the decision of the Supreme Court in the case of Chicago & N. W. Ry. Co. v. Bolle, 284 U.S. 74, 52 S.Ct. 59, 76 L.Ed. 173. This case was decided in 1931. The complexion of the Supreme Court was quite different on that date and the Fair Labor Standards Act had not even been thought of at that time and was not adopted until 1938. The whole legislative history of this last named Act and its purposes and intents as construed by the Supreme Court and inferior courts, show it was never intended that a narrow construction, such as that laid down in the Bolle case, should ever be applied to the decision of questions affecting wages and hours as governed by this Act.

I have reached the conclusion that the allegations of the Complaint as enlarged by the Bills of Particulars are sufficient and that the motions to dismiss should be refused.

III. The plaintiff takes the position that the matter should not be entirely foreclosed upon this motion, but that the case should go to trial so that all facts may be developed. I adopt this suggestion and limit the foregoing views to the situation as set forth in the pleadings and in the motion. In other words, the order in this case will refuse to grant the motion to dismiss and will allow the defendants an opportunity to answer and all parties to present such evidence as may be relevant. It is possible, when all facts are disclosed and the exact terms of employment more clearly brought forth, that the defendants may be able to show that the employees in question are not covered by the Act. The order will, therefore, provide that a similar motion may be presented after the testimony is taken, provided of course the facts warrant it.

An order will be entered carrying out the foregoing views.